[Cite as *North Valley Bank v. ABC Mfg., Inc.*, 2017-Ohio-5696.]

COURT OF APPEALS
MUSKINGUM COUNTY, OHIO
FIFTH APPELLATE DISTRICT

| | | | |
|---|---|---|---|
| NORTH VALLEY BANK | : | | JUDGES: |
| | : | | Hon. W. Scott Gwin, P.J. |
| Plaintiff-Appellee | : | | Hon. John W. Wise, J. |
| | : | | Hon. Earle E. Wise, Jr., J. |
| -vs- | : | | |
| | : | | |
| ABC MANUFACTURING, INC., ET AL. | : | | |
| | : | | |
| Defendants-Appellees | : | | Case No. CT2016-0051 |
| | : | | |
| and | : | | |
| | : | | |
| IMAC ENTERPRISES, LLC | : | | |
| | : | | |
| Intervening Defendant-Appellant | : | | O P I N I O N |

CHARACTER OF PROCEEDING:     Appeal from the Court of Common
                             Pleas, Case No. CH2013-0496

JUDGMENT:                    Reversed and Remanded

DATE OF JUDGMENT:            June 29, 2017

APPEARANCES:

For Plaintiff-Appellee                    For Intervening Defendant-Appellant

MICHAEL D. STULTZ                         PAUL R. HOFFER
CHRISTOPHER C. CAMBONI                    P.O. Box 83
106 East Market Street                    Clinton, OH  44216
Tiffin, OH  44883
                                          JAMES E. BANAS
                                          P.O. Box 172
                                          Clinton, OH  44216

[Cite as *North Valley Bank v. ABC Mfg., Inc.*, 2017-Ohio-5696.]

For Receiver

KENNETH R. GOLDBERG
575 South Third Street
Columbus, OH  43215

For Morgan County
Commissioners & Treasurer

MARK J. HOWDYSHELL
19 East Main Street
McConnelsville, OH  43756

For Additional Appellees

JOHN M. KAHLER
216 South Washington Street
Tiffin, OH  44883

JOHN K. CHRISTIE
155 East Main Street
Room 230
McConnelsville, OH  43756

For James Piggot, Jr.

J.W. KREUGER & ASSOC., LLC
P.O. Box 360135
Cleveland, OH  44136

For State of Ohio Development
Services Agency

SHANNON W. HUSBAND
3030 West Grand Boulevard
Suite 9-600
Detroit, Michigan  48202

ANDREW P. COOKE
260 Market Street
P.O. Box 227
New Albany, OH  43054

*Wise, Earle, J.*

{¶ 1}  Intervening Defendant-Appellant, IMAC Enterprises, LLC, appeals the August 19, 2016 order of the Court of Common Pleas of Muskingum County, Ohio, denying its motion to intervene.  Plaintiff-Appellee pertinent to this appeal is North Valley Bank.

## FACTS AND PROCEDURAL HISTORY

{¶ 2}  On November 27, 2013, appellee filed a complaint in foreclosure against ABC Manufacturing, Inc. and others, seeking to collect on a debt owed.  A receiver was appointed on same date.

{¶ 3}  Appellant became aware of real estate for sale in Malta, Ohio, which was part of the receiver's estate.  On June 11, 2014, appellant and receiver entered into a lease and purchase agreement for both the real estate and the personal property therein.  By judgment entry filed June 13, 2014, the trial court granted appellee default judgment as against ABC Manufacturing.  On August 8, 2014, receiver filed a motion for authority to sell the real estate and the personal property.  By order file August 19, 2014, the trial court granted the motion.

{¶ 4}  Thereafter, appellant took possession of the real estate.  Pursuant to the lease agreement, appellant made rental payments to receiver and made an earnest money deposit toward the purchase agreement.  Subsequently, because appellant could not obtain financing, appellant and receiver negotiated several modifications to the closing date for the purchase of the real estate and the personal property, with appellant making additional earnest money deposits.  Appellant made payments totaling $325,000.00 toward the final purchase price of $1,350,000.00.

{¶ 5} Because appellant was unable to complete the purchase agreement by the agreed date, on May 5, 2015, receiver filed a motion for authority to sell the real estate and the personal property at public sale. On May 12, 2015, appellant filed a motion to intervene in the case to protect its interest in the real estate and the personal property and a motion in opposition to receiver's motion to sell the property. The trial court set a hearing for June 12, 2015. Prior to the hearing date, the parties reached an agreement giving appellant until September 15, 2015 to complete the sale; if appellant did not complete the sale, receiver could sell the real estate and the personal property at public auction. This agreement was memorialized in a judgment entry approved by the parties and signed by the trial court and filed on August 13, 2015.

{¶ 6} Appellant failed to complete the purchase by September 15, 2015. Receiver sold the real estate via a public sale on September 16, 2015. By order filed September 29, 2015, the trial court approved receiver's report, confirmed the public sale, and authorized closing.

{¶ 7} On October 5, 2015, receiver filed a report, informing the trial court that he was proceeding with the sale of the personal property, and made a request for instructions regarding the $325,000.00 earnest money deposits paid by appellant. On October 15, 2015, the trial court filed a journal entry directing the parties to submit their respective positions as to the earnest money deposits. Briefs were filed and appellant requested a hearing on the issue. On March 28, 2016, appellant again requested a hearing. A hearing was held on July 22, 2016. During the hearing, the trial court entertained arguments on appellant being made a party to the case. The trial court

denied the motion to intervene which was memorialized by order filed August 19, 2016. Appellant filed an appeal to the trial court's order.

{¶ 8} On September 20, 2016, the trial court filed findings of fact and conclusions of law, determining the earnest money deposits paid by appellant were nonrefundable and appellant lost all interest it had in the property and was therefore not an interested party to the action.

{¶ 9} This matter is now before this court for consideration. Assignments of error are as follows:

I

{¶ 10} "THE TRIAL COURT ERRED TO THE PREJUDICE OF APPELLANT BY ABUSING IT'S DISCRETION IN OVERRULING APPELLANT'S MOTION TO INTERVENE IN THE CASE AS A PARTY DEFENDANT, PURSUANT TO CIV. R. 24, THUS DENYING APPELLANT THE OPPORTUNITY TO PROTECT IT'S INTEREST IN FUNDS HELD BY THE COURT APPOINTED RECEIVER."

II

{¶ 11} "THE TRIAL COURT ERRED TO THE PREJUDICE OF APPELLANT BY ABUSING IT'S (SIC) DISCRETION IN OVERRULING APPELLANT'S MOTION TO INTERVENE IN THE CASE AS A PARTY DEFENDANT, PURSUANT TO CIV.R. 24, THEN MAKING A DETERMINATION IN IT'S (SIC) FINDING OF FACTS AND CONCLUSION OF LAW THAT APPELLANT WAS NOT ENTITLED TO ANY FUNDS AS THEY WERE NON-REFUNDABLE."

III

{¶ 12} "THE TRIAL COURT ERRED TO THE PREJUDICE OF APPELLANT BY FAILING TO RULE ON APPELLANT'S OBJECTION TO THE RECEIVER'S MOTION FOR AUTHORITY TO SELL REAL ESTATE IN WHICH APPELLANT HAD AN INTEREST, AND LATER GRANTING AUTHORITY WITHOUT ALLOWING AN ORAL HEARING."

{¶ 13} At the outset, appellee argues the trial court's denial of appellant's motion to intervene is not a final appealable order. We find the decision is a final appealable order under R.C. 2502.02(B)(1). The trial court's August 19, 2016 denial affected a substantial right determining the action and preventing a judgment, and appellant could not assert its claims in other litigation as discussed later in this opinion. The August 13, 2015 judgment entry did not specifically resolve appellant's motion to intervene as evidenced by the trial court entertaining argument on the motion during the July 22, 2016 hearing. The trial court denied the motion on August 19, 2016, and appellant filed its notice of appeal on September 13, 2016. The appeal was timely filed and is properly before this court.

I

{¶ 14} Appellant claims the trial court erred in denying its motion to intervene to protect its interest in the earnest money deposits. We agree.

{¶ 15} Civ.R. 24 governs intervention. Subsection (A) states the following:

**(A) Intervention of right**

Upon timely application anyone shall be permitted to intervene in an action: (1) when a statute of this state confers an unconditional right to intervene; or (2) when the applicant claims an interest relating to the property or transaction that is the subject of the action and the applicant is so situated that the disposition of the action may as a practical matter impair or impede the applicant's ability to protect that interest, unless the applicant's interest is adequately represented by existing parties.

{¶ 16} As explained by this court in *Deutsche Bank National Trust Co. v. Hill,* 5th Dist. Perry No. 14 CA 00021, 2015-Ohio-1575, ¶ 25:

In order for a party to intervene as a matter of right, pursuant to Civ.R. 24(A), all four of the following elements must be met: (1) the intervenor must claim an interest relating to the property or transaction that is the subject of [the] action; (2) the intervenor must be so situated that the disposition of the action may, as a practical matter, impair or impede the intervenor's ability to protect his or her interest; (3) the intervenor must demonstrate that his or her interest is not adequately represented by the existing parties; and (4) the motion to intervene must be timely. *Fairview Gen. Hosp. v. Fletcher,* 69 Ohio App.3d 827, 591 N.E.2d 1312 (10th Dist.1990). "Failure to meet any one of the elements in Civ.R. 24(A) will result in denial of the right to intervene." *Id.* at 831. Civil rule 24(A) is to be liberally construed in favor of intervention, but the

putative intervenor still bears the burden of establishing each of the elements to intervene. *Grover Court Condominium Unit Owners' Assn. v. Hartman,* 8th Dist. No. 94910, 2011-Ohio-218.

{¶ 17} Our standard of review based on Civ.R. 24(A) is de novo. *Deutsche Bank* at ¶ 21. *Accord McKinney v. Omni Die Casting, Inc.,* 5th Dist. Stark No. 2015CV00838, 2017-Ohio-2949, ¶ 22.

{¶ 18} Appellant is claiming an interest in the $325,000.00 earnest money deposits relating to the lease and purchase agreement governing real and personal property subject to the receivership and the action sub judice. Appellee argues because the earnest money deposits were nonrefundable as outlined in the parties' lease and purchase agreement and subsequent modifications, appellant did not have any interest in the funds.

{¶ 19} During the July 22, 2016 hearing, appellant acknowledged the agreements indicated the earnest money deposits were nonrefundable, but argued the following (T. at 4-5 and 10-13):

MR. HOFFER: * * * However, as I indicated in my brief with the case law, there's - - there's also equity that has to be taken in to consideration. The understanding of my client in entering in to those agreements and the purpose of earnest money down deposit is - - is that if he's not able to complete the sale and it's to cover - - it's a liquidated damage, the expenses of - - of the seller and the loss of the benefit of the

bargain and the seller, in this case because the property sold for several hundred thousand dollars more than what the purchase contract actually was, and because my client occupied the premises, improved the premises, did repairs with the agreement of the receiver, the receivership has stayed, actually materially benefited, from the transaction. And we believe based on the case law that we submitted that the equities would call for a return of that.

Normally, in an earnest money situation, the buyer puts down a - - a very modest amount of money to hold the purchase. Here my client paid almost - - well, actually over 25 percent of the total purchase price and that is far more than just a - - a normal, nominal earnest money deposit as a liquidated damage. It's far in excess of what normally happens in a transaction to purchase real estate.

* * *

MR. HOFFER: Yes, Your Honor. If you take a look at the various contracts, Your Honor, there was not - - it was not consideration for an extension of time. The consideration was - - is that the original contract was for 1.25 million dollars between the receiver - - the testimony - - if you were to hear testimony between the receiver and Mr. Petit (sic), was that he would - - that they agreed to increase the purchase price from 1.25 million dollars to 1.35 million dollars.

And the closing statements clearly show that the money was paid, they're calling consideration for keeping this contract open, was actually

being applied towards the purchase price. So it was not consideration for any option. They did that by increasing the price of the - - of the purchase of the realty and the personalty, it was - - but not the - - the individual payments that were being made.

So the argument that the bank is making does not reflect reality. They were not a party actually to the transaction between the receiver and Mr. Petit (sic).

And again, if we were to present testimony, we would clearly show that - - that the deposits were just that, they were down payment towards the purchase of the property, not any kind of option or consideration for anything else.

And again, what we're saying is that - - that the equities in this - - in this case, because of the amount of money that is involved, because of the fact that - - of the fact that the property in fact obtained - - obtained substantially more money from the sale of the property than what the original contract called for, the purpose of the money is - - was to be a liquidated damage, not a penalty which is how the bank's argument is, they should be penalized because of some sort of buyer's remorse when in fact the bank is seeking a windfall here because my client was not able to complete the purchase but the estate was able to garner substantially more money than from anyone else.

And I would remind the Court that prior to my client coming in to this, this property had been for sale for many years. No purchasers whatsoever.

THE COURT: How many years in the receivership? Not many.

MR. HOFFER: Well, not as many years in the receivership. But my client was the only person who - - who made an - - a legitimate offer to buy the property and, in fact, occupied the premises and made, again, substantial repairs and improvements to the property at the behest of the receiver because the receiver did not have any money to make those repairs. And my client made those repair on behalf of the receiver and, I guess, arguably, on behalf of the Court itself since the Court - - the receiver is working for the Court here. So we're asking the Court to - - to do equity in this case and - -

THE COURT: What - -

MR. HOFFER: - - we're going for - -

THE COURT: What do you think the clear language is that it's nonrefundable means?

MR. HOFFER: I - - I understand that, Your Honor. I will also indicate to the Court that - -

THE COURT: What did your client think it meant when they entered in to it? I mean - -

MR. HOFFER: Again, what he understood was is that if the property did not - - if he did not complete the transaction and the receiver

had to sell the property and did not get the purchase price that they agreed to, that he would lose his money. He was - -

THE COURT: It was only nonrefundable if certain things happened?

MR. HOFFER: That's correct.

THE COURT: It was refundable if other things happened but - -

MR. HOFFER: He understood that if he - - if they got more money than that, that he would get his money back.

{¶ 20} In support of its arguments, appellant filed the affidavit of Andrew Petitt, its managing member. The affidavit is attached to appellant's Brief in Regards to Disposition of its Down Payment Towards Purchase of Real Estate and Personal Property filed October 26, 2015. Mr. Petitt averred that appellant paid $86,322.69 for the maintenance, care, and improvements to the real estate, including mowing and snow removal, clean-up and repairs to the building, welding and electrical work, and repairs and trenching of water lines to out buildings. Appellant also paid $10,387.19 to "put into working order a number of items of equipment and personal property located on the premises, including but not limited to the paint line, tow motors, HVAC, and locks, etc." Mr. Petitt averred appellant's members "expended their own personal labor to clean up, maintain, repair, and improve" the real estate and the personal property, the fair market value of the labor totaling $31,200.00. The total amount expended by appellant to significantly benefit the property and the receivership was $127,909.88.

{¶ 21} In fact, on October 5, 2015, it was receiver who requested instructions from the trial court regarding the earnest money deposits, noting the following:

It should be noted by the Court that early in the receivership, the initial purchase offer for the combined real estate and equipment was $980,000, the IMAC purchase agreement increased the price to $1,250,000, and later $1,350,000, and at the Receiver's Public Sale the real estate, only, was sold for $1,600,000. The auction of the equipment will likely bring an additional estimated $200,000 to $350,000. Thus, the final sale price for all receivership assets will likely be almost double the initial offer, not including the IMAC $325,000 deposit held by the Receiver.

The Receiver acknowledges that IMAC has enhanced the value of the receivership estate, including the real estate and equipment. IMAC leased the premises from the Receiver and during that time and has reportedly spent $200,000 to improve both the equipment and the real estate. The most recent real estate appraisal valued the real estate at $1,600,000, significantly higher than the initial $1,100,000 appraised value. Equipment that was in very poor condition has been cleaned and repaired and put into good operating condition. The real estate has been cleaned up enhancing both its appearance and value. The receivership paid approximately $5,000 to $10,000 less to abate the hazardous waste situation at the premises because of work performed by IMAC. Although IMAC is not current on its rent payment to the Receiver, IMAC has paid

costs for the receivership estate including maintenance, repairs, insurance and utilities and has been a positive presence at the premises which prevents theft and vandalism. The Receiver is still a weekly presence at the premises, as well.

{¶ 22} In his seventh report filed eight days later on October 13, 2015, receiver noted there "was an immediate adverse response" to the request for instructions, and clarified he was not an advocate for appellant and "feels that the $325,000 deposit towards IMAC's purchase of the real estate and equipment was non-refundable." Even the receiver questioned appellant's interest in the funds and then did an about-face after receiving an "immediate adverse response."

{¶ 23} We find appellant has adequately claimed an interest "relating to the property or transaction that is the subject of [the] action" and has fulfilled the first requirement.

{¶ 24} Under the second requirement, appellant must establish it is "so situated that the disposition of the action may, as a practical matter, impair or impede the intervenor's ability to protect his or her interest." Appellee argues as to any claims for breach of contract, appellant "would not be collaterally estopped from bringing similar claims in other litigation," and appellant's claims to recover rents and insurance paid "could be asserted in other litigation." Appellee's Brief at 6.

{¶ 25} In the Purchase and Sale Agreement at ¶ 20(b), the parties agreed to the following:

(b) It is mutually agreed by and between Seller and Purchaser that the respective parties hereto shall and do hereby waive any right to a trial by jury in any action or proceeding to enforce or defend any rights under this agreement or relating thereto or arising from the relationship which is the subject of this Agreement and that any such action or proceeding shall be tried before a court and not before a jury. Each party acknowledges that it has read and understands this waiver and has been advised by counsel as necessary or appropriate. This waiver is made knowingly and voluntarily by the parties hereto. *Seller and Purchaser expressly and exclusively consent to the jurisdiction of the Court in the Receivership Case and the Muskingum County Common Pleas Court for purposes of resolving all claims and disputes relating to this Agreement.* (Emphasis added.)

{¶ 26} Appellant argues this language required any dispute involving the receiver be litigated in the receivership case, and barred appellant "from bringing an action or proceeding in any other court in another case." Appellant's Reply Brief at 3.

{¶ 27} We find the emphasized language to be unclear. The parties consented to the jurisdiction of the receivership court AND the Muskingum County Common Pleas Court to resolve ALL claims and disputes relating to the agreement. In using the conjunction "and," did the parties agree to the jurisdiction of two separate courts for different claims? We find this interpretation to be nonsensical. The agreement governs

real estate and personal property subject to the receivership.  The Muskingum County Common Pleas Court is also the receivership court.

{¶ 28} We find appellant adequately established its ability to protect its interest may be impaired or impeded by the disposition in this case, thereby meeting the second requirement.

{¶ 29} Appellant's interest is not adequately represented by the existing parties, as evidenced by the parties' briefs in opposition to appellant receiving any refund of the earnest money deposits, thereby meeting the third requirement.  *See* Earnest Money Position of Defendant Morgan County Commissioners filed October 21, 2015; North Valley Bank's Memorandum Concerning the $325,000 Earnest Money Deposit filed October 23, 2015; Receiver's Response to Order Directing the Parties to Present Positions with Regard to the $325,000 Earnest Money Deposit filed October 26, 2015; and North Valley Bank's Memorandum Opposing IMAC Enterprises, LLC's Claim to Nonrefundable Earnest Money filed December 3, 2015.

{¶ 30} Receiver filed a motion for authority to sell the real estate and the personal property at public sale on May 5, 2015.  One week later, on May 12, 2015, appellant filed a motion to intervene in the case to protect its interest in the real estate and the personal property and a motion in opposition to receiver's motion to sell the property. We find the motion was timely made, meeting the fourth and last requirement.

{¶ 31} Upon review, we find the trial court erred in denying appellant's motion to intervene.

{¶ 32} Assignment of Error I is granted.  Assignments of Error II and III are moot.

{¶ 33} The judgment of the Court of Common Pleas of Muskingum County, Ohio is hereby reversed, and the matter is remanded to said court for further proceedings consistent with this opinion.

By Wise, Earle, J.

Gwin, P.J. and

Wise, John, J. concur.

EEW/sg 605